27941. ARMISTEAD *v.* CITY OF ATLANTA.

DECIDED FEBRUARY 5, 1940.   REHEARING DENIED MARCH 6, 1940.

*H. A. Allen,* for plaintiff.

*J. C. Savage, C. S. Winn, J. C. Murphy, E. L. Sterne,* for defendant.

SUTTON, J.   This was a suit by John Armistead against the City of Atlanta, for $1849.98 alleged to be due as commissions on taxes collected on personal property by reason of information furnished by him to the city under a contract between them in respect thereto.   The defendant answered and set up that it had advanced to the plaintiff $2000 against commissions to be earned by him under the contract between them, that he was indebted to the defendant in the sum of $1849.98, as a balance on the amount advanced, and that the defendant was entitled to set off against this balance the amount of commissions sued for, $1849.98, and, therefore, the defendant was not indebted to the plaintiff in any sum. The case was tried before the judge, without the intervention of a jury, on an agreed statement of facts.   He found in favor of the defendant, and the plaintiff excepted.

It appears from the agreed statement of facts that on February 17, 1937, the mayor and general council of the City of Atlanta passed a resolution authorizing the tax assessors and receivers to employ some person, to be designated as "special tax investigator," to assist in discovering personal property which had not been returned or assessed for taxation, and placing the same on the tax digest, so that any taxes due thereon might be collected.   It was provided in this resolution that "Such investigator employed shall receive as full compensation for all services rendered a sum not to exceed fifteen per cent. (15%) as may be agreed on by the tax assessors and receivers, of the amounts of money collected as a result of the information furnished by the investigator and of the taxes levied and collected, said amount to be paid only after and when collection has been made from the taxpayer and actually paid to the city."   On March 31, 1937, pursuant to said resolution, the

City of Atlanta entered into a contract with John Armistead, whereby he was employed to furnish the proper taxing authorities of the city detailed information and evidence sufficient to assure the collection of taxes on the kind of personal property therein referred to and which had not been returned or assessed for taxation. The contract provided: "In consideration of such services, party of the first part will pay to party of the second part fifteen (15%) per cent. of any taxes actually collected upon information furnished in accordance with the preceding paragraphs of this agreement. Such sum shall not be payable until party of the first part has actually collected such taxes. . . Party of the second part to be compensated only as herein provided." On March 8, 1938, the mayor and general council passed another resolution, reciting that approximately $140,000 worth of fi. fas. on intangible personal property had been placed on the tax books and were then in the hands of the municipal revenue collector, and that John Armistead had a claim for commissions under a contract for having placed said property on the tax digest, and that he "has requested that he be advanced the sum of $2000, to be applied against commissions on the collection of such tax fi. fas.," and it was then provided "that the sum of $2000 be advanced to the said John Armistead from the department of G-26-62-531B, commissions on tax fi. fas. on intangible property only, issued by the tax assessors and receivers in the hands of the municipal revenue collector. And that said sum be charged against the commissions that the said Armistead may be entitled to upon future collections of taxes on the tax fi. fas. upon intangible properties, which are now in the hands of the municipal revenue collector, which were placed upon the tax digest through the efforts of said Armistead and upon which he may legally be entitled to a commission."

It was stipulated in the agreed statement of facts: "The commissions which have been earned by plaintiff against the above fi. fas. referred to in the resolution of March 8, 1938, as amounting to approximately $140,000, amount to date to the sum of $150.52. These commissions have been applied against the advance of $2000, leaving a balance on said advance of $1849.48. In addition to the commissions amounting to $150.52, above referred to, the plaintiff herein has earned commissions amounting to several thousands of dollars. All of these commissions have been paid

to the plaintiff by the city with the exception of $1849.48, which the city is holding to repay the balance on said advance, equal to that amount. These commissions were earned not out of the fi. fas. above referred to, amounting to $140,000, but out of fi. fas. which the plaintiff subsequently helped to put on the tax books." The plaintiff contends that the resolution authorizing the advancement of $2000 to him restricted the city to the repayment thereof out of commissions to be earned on the tax fi. fas. amounting to approximately $140,000 then in the hands of the municipal revenue collector. The defendant contends that this advancement created a debt, and that it was not restricted in the repayment of same to commissions on the $140,000 worth of fi. fas., but that it could repay itself therefor out of other commissions earned by the plaintiff under the contract between them.

The only compensation that the plaintiff was entitled to receive for his services in connection with the collection of delinquent taxes was that provided for by the contract between him and the city. What was the contract and what was the intention of the parties in respect thereto? The resolution authorizing the employment of a "Special Tax Investigator" provided that such person was to receive as full compensation for his services a sum not exceeding 15 per cent. of the taxes collected as a result of his information and efforts, said compensation to be paid only after such taxes were collected by the city. Pursuant to this resolution the contract entered into between the parties hereto provided that the city would pay Armistead 15 per cent. of any taxes actually collected upon information furnished by him in accordance with the contract, and that such sum was not payable until the city had actually collected such taxes, that Armistead was to be compensated only as provided in the contract.

"The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." Code, § 20-702. Applying this cardinal rule of construction to the contract and the two resolutions above referred to, it clearly appears that the only compensation to be received by the plaintiff was a commission of 15 per cent. on the taxes actually collected by the city as a result of his efforts. The

advance of $2000 authorized under the resolution of March 8, 1938, was to be *charged* against the fi. fas. then in the hands of the municipal revenue collector on the assumption that they would yield enough taxes to offset the charge, and the resolution, properly construed, did not purport to change the contract and allow him more compensation than originally agreed upon or to restrict the source of credits from which the advance might be deducted. The expected taxes from the particular fi. fas. not having been realized, the charge, to the extent of $1849.98, still remains unsatisfied, and is properly deductible from any credits that Armistead may be entitled to under the contract. It appears from the record that he has been paid, including the $2000 advanced, 15 per cent. on all the taxes actually collected by the city as a result of his services under the contract, and we think that the trial court correctly held that he was not entitled to recover in this case. While it appears that only a small portion of the $140,000 in fi. fas., which was on the tax books when the $2000 advance was made to the plaintiff has been collected, still the plaintiff's 15 per cent. commission on other large sums of taxes later collected by the city as a result of his efforts amounted to enough to cover the balance of the $2000 advance.

The present case is distinguishable on its facts from *Fried* v. *Portis Brothers Hat Co.,* 41 *Ga. App.* 30 (152 S. E. 151), and *Smith* v. *Franklin Printing Co.,* 54 *Ga. App.* 385 (187 S. E. 904), cited and relied on by the plaintiff. In these cases it was held, in effect, that where a salesman under a contract is given a "drawing account" payable in designated instalments, and the payments made on the drawing account are to be charged against commissions to be earned by him, he is not liable for the balance, if the commissions earned do not equal the amount advanced on the drawing account, as such payments are unconditional payments, under the contract, for services rendered. The compensation to be paid the plaintiff under the contract in the case at bar was to be 15 per cent. of the taxes actually collected by the city through his efforts; and we think the court properly held that he was not entitled to recover in this case.

*Judgment affirmed. Stephens, P. J., concurs.*

FELTON, J., concurring specially. I concur in the judgment of affirmance, for the reason that the second resolution and the facts

attending its passage do not constitute a novation of the original contract or a new contract with reference to the subject-matter embraced therein, because there was no consideration therefor. The second resolution, in my opinion, is unambiguous, taken alone or in connection with the contract and first resolution. It simply is not binding on the city as a contract, because it is nudum pactum.